UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPHINE LOGUIDICE *and*
EMILIE NORMAN,

                             Plaintiffs,

      v.

GERBER LIFE INSURANCE COMPANY,

                             Defendant.

No. 20-CV-3254 (KMK)

OPINION & ORDER

---

Appearances:

Amanda Rosenberg, Esq.
Jeffrey D. Kaliel, Esq.
Kaliel Gold PLLC
Washington, DC
*Counsel for Plaintiffs*

Natalie A. Lyons, Esq.
Lynn A. Toops, Esq.
Cohen & Malad, LLP
Indianapolis, IN
*Counsel for Plaintiffs*

James G. Stranch, IV, Esq.
Michael G. Stewart, Esq.
Stranch, Jennings & Garvey, PLLC
Nashville, TN
*Counsel for Plaintiffs*

James J. Bilsborrow, Esq.
Weitz & Luxenberg, PC
New York, NY
*Counsel for Plaintiffs*

Patrick J. Gennardo, Esq.
Joseph G. Tully, Esq.
Alston & Bird, LLP
New York, NY
*Counsel for Defendant*

Brent D. Craft, Esq.
Emily St. Cyr, Esq.
Eric W. Richardson, Esq.
Jordan Steiner, Esq.
Joseph Brunner, Esq.
Petra Bergman, Esq.
Vorys Sayer Seymour & Pease LLP
Cincinnati, OH
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Plaintiffs Emilie Norman ("Norman") and Josephine Logiudice ("Logiudice," together "Plaintiffs") bring this Action against Gerber Life Insurance Company ("Defendant" or "Gerber") for violations of New York General Business Law §§ 349 and 350 ("GBL") and common law fraud in the inducement. (*See generally* Sec. Am. Compl. (Dkt. No. 25).) Norman now seeks to substitute Logiudice's adult son, Anthony Logiudice, to replace Logiudice after her death. (*See* Dkt. Nos. 106, 110.) For the reasons that follow, Norman's request for substitution is granted in part and denied in part.

I. Background

On August 10, 2022, Norman, by and through counsel, notified this Court pursuant to Federal Rule of Civil Procedure 25(a)(1) of the death of Logiudice, which occurred on or about July 16, 2022 in Ocala, Florida. (*See* Dkt. No. 97.) Norman submitted the instant motion to substitute Logiudice's adult son, Anthony Logiudice, as Plaintiff on September 12, 2022 (the "Motion"). (*See* Mem. of Law in Supp. of Mot. to Substitute Party ("Pl.'s Mem.") (Dkt. Nos. 106, 110).) On September 14, 2022, Norman submitted a letter notifying the Court that on September 13, 2022, the Probate Court in Marion County, Florida admitted Logiudice's will to probate and appointed Anthony Logiudice as personal representative of her estate. (*See* Dkt. No. 107.) Defendant filed its opposition on September 26, 2022. (*See* Mem. of Law in Opp. of Mot.

2

to Substitute Party ("Def.'s Mem.") (Dkt. No. 109).)  Norman replied on October 3, 2022.  (*See* Reply to Mot. ("Pl.'s Reply") (Dkt. No. 113).)

## II.  Discussion

### A.  Rule 25

Rule 25(a)(1) states in part: "If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative."  Fed. R. Civ. P. 25(a)(1).  "To satisfy Rule 25(a)(1), (1) the motion must be timely; (2) the claims must survive the decedent's death, and (3) the party sought to be substituted for the decedent must be a proper party."  *CFS 12 Funding LLC v. Wiesen,* No. 21-CV-9711, 2023 WL 3817910, at *1 (S.D.N.Y. June 5, 2023) (citation and quotation marks omitted).  "Rule 25(a)(1) is intended to provide an efficient and flexible means for substituting a party."  *Id*.

### B.  Timeliness

Rule 25(a)(1) provides 90 days "after service of a statement noting [a party's] death" for filing a motion for substitution.  Fed. R. Civ. P. 25(a)(1).  Norman brought this Motion 33 days after notifying this Court pursuant to Federal Rule of Civil Procedure 25(a)(1).  (*See* Pl.'s Mem.)  It is undisputed that the Motion was timely—Defendant does not object to timeliness.  (*See generally* Def.'s Mem.)  Accordingly, the Motion is timely brought.  *See Joseph D. H. v. Comm'r of Soc. Sec.*, No. 20-CV-881, 2022 WL 16757045, at *2 (W.D.N.Y. Nov. 8, 2022) (holding motion to substitute was timely when it was submitted "well within the 90 days provided by Rule 25(a)(1)"); *Wagley v. JPMorgan Chase Bank, N.A. as Tr. of Mary Penney Wagley Irrevocable Tr.,* No. 18-CV-8668, 2021 WL 1406001, at *1 (S.D.N.Y. Apr. 13, 2021)

("Plaintiffs' motion to substitute is timely, because it was submitted within 90 days of their notice to Defendants of Mary Frances Wagley's death.").

C.  Survival of Claims

To determine whether a claim survives a party's death under Rule 25(a)(1), "courts must look to the law of the State whose substantive law governs the cause of action." *Bruccoleri v. Gangemi*, No. 17-CV-7443, 2019 WL 499769, at *7 (E.D.N.Y. Feb. 8, 2019) (collecting cases); *see also Wagley*, 2021 WL 1406001, at *1 (applying New York law to determine claim survival in case where deceased plaintiff's estate was determined under Maryland law).

New York's survival statute provides, in relevant part: "No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent . . . ." N.Y. Est. Powers & Trusts L. ("E.P.T.L") § 11-3.2(b). GBL and fraud claims regularly survive the death of a party. *See, e.g., Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270, 2022 WL 900538, at *21–22 (E.D.N.Y. Mar. 28, 2022) (GBL claims survived); *Bruccoleri*, 2019 WL 499769, at *7 ("Plaintiff's claims sound in fraud or legal malpractice and therefore constitute 'injury to . . . property;' therefore, they survive under New York law." (alterations in original)); *Richards v. Johnson & Johnson, Inc.*, No. 17-CV-178, 2018 WL 4214357, at *9 & n. 15 (N.D.N.Y. Mar. 30, 2018) (noting that "survival claims" included fraud, §§ 349 and 350 claims); *Off. Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2017 WL 9485707, at *6 (E.D.N.Y. Aug. 3, 2017) (holding common-law claim for fraud survived), *report and recommendation adopted*, 2017 WL 3981299 (E.D.N.Y. Sept. 11, 2017); *English v. Murphy-Lattanzi*, No. 12-CV-4179, 2015 WL 630248, at *3 (E.D.N.Y. Feb. 12, 2015) ("Here, Plaintiff's claims for fraud, conversion and breach of

fiduciary duty all involve injuries to Plaintiff's property. Therefore, under Section 11–3.2, all of Plaintiff's claims survive Defendant's death."); *Allen ex rel. Allen v. Devine*, No. 09-CV-668, 2011 WL 5117619, at *3 (E.D.N.Y. Oct. 25, 2011) ("Allen's originally asserted causes of action sounding in contract and fraud are not extinguished by his death because under New York law, '[n]o cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed.'") (citing E.P.T.L. § 11–3.2(b) and *Cangemi v. Russomanno*, 824 N.Y.S.2d 768, at *3 (Sup. Ct. 2006) (holding that plaintiff's claims for breach of contract, unjust enrichment, and fraud were not extinguished by defendant's death)).

Defendant argues that "by virtue of Logiudice's death each of the Logiudice Policies transferred ownership, and, as a result, Logiudice (and her estate) no longer has a property interest in the Logiudice Policies," and that "[t]here is no cause of action upon which the Estate can 'step into the shoes of' Logiudice and pursue claims related to the Logiudice Policies because they are no longer Logiudice's or the Estate's property." (Def.'s Mem. 5 (emphasis omitted).) Defendant cites *no case law* for the proposition that a GBL or fraud claim cause of action requires present ownership of a property to proceed or that such a claim would extinguish upon the transference of ownership. As Norman notes:

> G.B.L. §§ 349 and 350 claims do not require present ownership of the purchased product; otherwise to maintain a claim, consumers would be prohibited from throwing away wipes that aren't actually flushable, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017), or the hair product that burned their scalp. *See In re Amla Litigation*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017). That is not the law under the G.B.L. and Gerber Life has no authority to suggest that it is.

(Pl.'s Reply 5.) Indeed, Norman herself no longer owns her policies as she cancelled them in June 2020 and many class members no longer presently own their policies, because about 50% of the Grow Up Plan policies challenged in this lawsuit lapse within the first three years of the initial purchase. (Sec. Am. Compl. ¶¶ 50–53; Supp. Lyons Dec. ¶ 7.)

5

Defendant argues that "[a]s a non-party to the policies, the Estate has no right to enforce the terms of the policies or to seek a rescission of the same—which is what Logiudice has requested by demanding a full refund of all premiums paid." (Def.'s Mem. 5.) In support, Defendant cites to cases standing for the proposition that a nonparty to a contract lacks standing to enforce that contract. (*Id*. (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) ("A non-party to a contract governed by New York law lacks standing to enforce the agreement in the absence of terms that clearly evidence[ ] an intent to permit enforcement by the third party in question." (quotation marks and citation omitted)); *In re Motors Liquidation Co.,* 580 B.R. 319, 340 (Bankr. S.D.N.Y. 2018) ("In the context of a contract dispute, only parties to the contract and intended third-party beneficiaries of the contract have prudential standing to appear and enforce agreements. Put differently, a non-party to a contract that does not contain unambiguous language manifesting an intent to make the non-party a beneficiary of that contract lacks prudential standing to litigate issues related to that contract." (citation omitted)). However, as this Court noted in resolving the Motion To Dismiss, "[t]he policy contracts here have little to do with the GBL claims," but more "to do with the juxtaposition of the various marketing material and representations that Gerber makes. *This is not a breach of contract case*." (Dkt. No. 61, at 56:1–5 (emphasis added).) Defendant does not explain how Logiudice's GBL and fraud claims—clearly not contract causes of action—seek to enforce the terms of any policy in this Action—therefore the cases cited are inapposite.[1]

Finally, Defendant argues that:

---

[1] Norman additionally notes that Defendant "cit[es] no authority [in] claiming that seeking a return of premiums as actual damages under the GBL or for fraudulent inducement somehow equates to rescission" and that "[n]owhere in the Complaint, briefing, or damages expert report, does Plaintiff seek rescission." (Pl.'s Reply 4.)

6

> If the Estate is able to proceed with these claims as a substitute for Logiudice, it would have the perverse effect of allowing the Estate to rescind the Policies and/or seek a full refund of premiums paid on the Logiudice Policies and other forms of relief stemming solely from the policies (to which neither she or her estate have any legal right), ***while at the same*** time allowing the current owners of the Logiudice Policies to retain the benefits provided under the Logiudice Policies, such as drawing on the cash value or obtaining the death benefit. The result would be a duplicative recovery, which is prohibited under New York law.

(Def.'s Mem. 6.) While it is true that "a plaintiff may not, as a matter of law, recover twice for the same injuries," Plaintiffs here do not seek duplicative recovery. *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 129 (2d Cir. 2009). For example, neither Plaintiff seeks to "recover windfall damages under multiple legal theories for the same loss." *In re Elec. Books Antitrust Litig.,* No. 11-MD-2293, 2014 WL 2535112, at *10 (S.D.N.Y. June 5, 2014); *cf. Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 479 (E.D.N.Y. 2021) (declining to award separate damages on common law claims "because the RICO damages wholly compensate [the] plaintiff and that award has been trebled," and "separate awards of damages on the common law fraud claims would amount to a double recovery for [the] plaintiff"); *Telesco v. Neuman*, No. 14-CV-3480, 2015 WL 2330166, at *6 (S.D.N.Y. Mar. 11, 2015) (dismissing conversion claim where, if plaintiff were to recover on that claim and his breach of contract claim, "he would in effect be paid twice").[2]

---

[2] Additionally, Norman notes that:

> concerns regarding party plaintiffs or class members obtaining damages, while also obtaining the death benefit under their policy have been addressed by Plaintiff's damages expert report that Gerber Life received months ago. Supp. Lyons Dec. ¶ 5. Plaintiff proposes to exclude individuals who received a death benefit; Plaintiff also provides an alternative damages methodology that reduces actual damages by the 'cost of insurance,' an amount identified by Gerber Life in discovery, and provides other methodologies that don't involve a full refund of premiums, such as seeking the return of the premium that covers Gerber Life's 'marketing (advertising) expenses.' Supp. Lyons Dec. ¶¶ 3-4.

7

As Defendant has not provided any reason Logiudice's GBL and fraud claims should not survive her death pursuant to E.P.T.L. § 11-3.2, the claims survive.

D. Proper Party

"Rule 25 does not define what it means for someone to be a 'proper party'"—courts have generally held that a "proper party" can be (1) "a representative . . . lawfully designated by state authority to represent the decedent's estate," (2) "the primary beneficiary of an already distributed estate," (3) "the person named in a will as the executor of the decedent's estate, even if the will is not probated," or (4) "the primary beneficiary of an unprobated intestate estate which need not be probated[.]" *Bruccoleri*, 2019 WL 499769, at *8 (collecting cases) (quotation marks omitted). State law determines whether a person is a proper "successor" or a "representative" of the deceased party. *See Gusler v. City of Long Beach*, No. 10-CV-2077, 2015 WL 3796328, at *2 (E.D.N.Y. June 18, 2015) (applying New York law). Here, Anthony Logiudice has been appointed by the Marion County, Florida probate court as the personal representative of Logiudice's estate. (*See* Dkt. No. 107.) As Anthony Logiudice is now the lawfully designated representative to represent Logiudice's estate, he is a proper party here. *See O'Rourke v. Drunken Chicken in NY Corp.,* No. 19-CV-3942, 2021 WL 1394176, at *2 (E.D.N.Y. Feb. 26, 2021) ("A proper party for substitution is either (1) a successor of the deceased party . . . (2) or a representative of the deceased party—a person lawfully designated by state authority to represent the deceased's estate." (quotation marks omitted) (alteration in original)), *report and recommendation adopted,* 2021 WL 973086 (E.D.N.Y. Mar. 16, 2021); *Worrell v. Colvin*, No. 12-CV-3386, 2013 WL 3364373, at *2 (E.D.N.Y. July 3, 2013) ("Either a 'representative of the deceased party's estate' or a 'successor of the deceased party' may be

---

(Pl.'s Reply 6.)

substituted for a plaintiff who has passed away." (citations omitted)); *Graham v. Henderson*, 224 F.R.D. 59, 64 (N.D.N.Y. 2004) ("A 'representative' of the deceased party's estate is a proper party for substitution."). Indeed, Defendant does not contest that Anthony Logiudice is a proper party. (*See generally* Def.'s Mem.)

E.  Relief

Defendant argues in the alternative that Logiudice's claims for punitive damages, treble damages, and injunctive and declaratory relief are extinguished upon death as a matter of law. (Def.'s Mem. 7–9.) As for punitive damages, applying § 11-3.2(b), the result is clear.

> No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed. For any injury an action may be brought or continued by the personal representative of the decedent, *but punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury where the death occurs on or before August thirty-first, nineteen hundred eighty-two.* On the trial of any such action accruing before September first, nineteen hundred seventy-five, which is joined with an action for causing death, the contributory negligence of the decedent is a defense, to be pleaded and proved by the defendant.

E.P.T.L. § 11-3.2(b) (emphasis added). The claims at issue pertained to injury to property not personal injury, accordingly, punitive damages are not prohibited. *See Villalba*, 2022 WL 900538, at *22 (holding that the substituted estate "as [the original plaintiff's] representative, may seek any form of damages that would have been available to [him], [including] the claim for punitive damages based on the GBL § 349"). Even if this were a case that implicated Logiudice's personal—instead of her property—interests, Logiudice's death clearly took place after August 31, 1982. Defendant's cited case law—much of which concerns federal causes of action or injuries to the person—is unhelpful. *See Doe v. Indyke*, 465 F. Supp. 3d 452, 469–72 (S.D.N.Y. 2020) (dismissing the plaintiff's claims for punitive damages against the decedent's estate for a *federal claim* and citing to § 11-3.2(a)(1)) in regard to the state cause of action which

9

pertains to the death of the person liable for the injury *not* § 11-3.2(b), stating "courts have found that a plaintiff cannot recover punitive damages for *personal injury* tort actions against a decedent's estate" (emphasis added)); *Roberts v. Lapp*, No. 02-CV-746, 2006 WL 8455665, at *3 (W.D.N.Y. June 19, 2006) (holding punitive damages did not survive in *personal injury* case while citing outdated 1977 Second Circuit decision, *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977)); *Equal Emp. Opportunity Comm'n v. Deloitte & Touche, LLP*, No. 97-CV-6484, 2000 WL 1024700, at *7 (S.D.N.Y. July 25, 2000) (holding regarding *federal* ADA claim for punitive damages with no mention of § 11-3.2); *Hawes v. Johnson & Johnson*, 940 F. Supp. 697, 702 (D.N.J. 1996) (holding that under *federal common law*, punitive damages did not survive under the ADEA).[3]

Defendant argues that because New York courts have "historically concluded that treble damages are punitive in nature," "Logiudice's claim for treble damages under the GBL statutes also extinguished upon her death." (Def.'s Mem. 8–9.) Because Defendant's argument regarding the survival of Logiudice's claims for treble damages rests on the flawed premise regarding punitive damages, it likewise is without merit.

Defendant additionally argues that Logiudice's claims for injunctive and declaratory relief are extinguished upon death as a matter of law. (*See id*. at 9.) The case law Defendant cites to in support of the proposition that declaratory relief does not survive a party's death does

---

[3] While *Duchesne v. Sugarman*, 566 F.2d at 822 n. 2, cited by Defendant and *Roberts*, offers a cursory statement regarding punitive damages not being allowed under E.P.T.L. § 11-3.2, the case was decided before the statute was amended to allow for punitive damages in personal injury cases brought by the personal representative. *See* Turano, Practice Commentary, McKinney's Cons. Laws of NY, E.P.T.L. § 11-3.2 ("Under prior law, if the victim died, the court could not award punitive damages against the tortfeasor, with the result that one who committed a reckless or grossly negligent wrong faced less liability if the victim died than if he survived. The legislature acted to change this gruesome anomaly by L.1982, ch. 100, § 2.").

not pertain to EPTL 11.3-2(b). (*Id*. (citing cases standing for the proposition that declaratory relief claims for federal causes of action are extinguished after death).) Indeed:

> EPTL 11.3-2(b) merely provides that "[n]o cause of action for injury to person or property *is lost* because of the death of the person." EPTL § 11-3.2(b) (emphasis added). The provision does not list what claims a deceased plaintiff's representative *can* pursue, it lists only those claims a representative *cannot* pursue (namely, punitive damages on behalf of someone who died before August 31, 1982). Plaintiff thus has standing to seek whatever form of relief [the decedent] would have been able to obtain.

*Villalba*, 2022 WL 900538, at *22 (emphasis in original). Accordingly, Defendants have not provided a valid reason to dismiss Logiudice's claims for declaratory relief. Norman, however, agrees that Logiudice's claim for injunctive relief does not survive her death because, since her death, payments under the policies have stopped, and the ongoing monthly premium payments were the basis for injunctive relief. (Pl.'s Reply 10.)

### III. Conclusion

For the foregoing reasons, Norman's request for Logiudice's substitution is granted in part and denied in part. Norman's request for substitution is granted in all respects except for Logiudice's claim for injunctive relief which is dismissed by consent. Because Norman's substitution motion remained pending while the motion for class certification was briefed in this Action, Norman sought class certification for herself and noted in her class certification moving brief that should the Court grant the instant Motion and order substitution, Norman "will supplement [the class certification] motion." (Dkt. No. 128, at 2.) Accordingly, the Court denies the class certification motion without prejudice to resubmit with argument pertaining to Logiudice. Plaintiffs' class certification motion is due October 31, 2023. Defendant's opposition to the class certification motion and any motions to strike Plaintiffs' experts are due by November 30, 2023. Plaintiffs' reply to Defendant's opposition to the class certification

motion is due January 1, 2024, along with any motions to strike Defendant's experts and oppositions to any motions to strike Plaintiffs' experts. Defendant's replies to oppositions to any motions to strike Plaintiffs' experts and oppositions to any motions to strike Defendant's experts are due by January 31, 2024. Plaintiffs' replies to oppositions to any motions to strike Defendant's experts are due by February 29, 2024. The Clerk of the Court is respectfully requested to terminate the pending motions.

SO ORDERED.

DATED:   September 21, 2023
         White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE