UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPHINE LOGUIDICE and EMILIE NORMAN,<br><br>            Plaintiffs,<br><br>      v.<br><br>GERBER LIFE INSURANCE COMPANY,<br><br>            Defendant. | Case No. 7:20-cv-03254-KMK<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**MOTION TO APPROVE RULE 23 CLASS NOTICE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  BACKGROUND ................................................................................................................. 2

   A.   Class Certification.................................................................................................. 2

   B.   Class Definition ..................................................................................................... 2

   C.   Class Notice Plan ................................................................................................... 3

   D.   The Parties' agreed Class Notice Plan ................................................................... 3

III. ARGUMENT ....................................................................................................................... 4

   A.   The Class Definition should be amended to exclude certain agreed upon individuals ....... 4

   B.   The Parties' agreed Notice Plan meets Rule 23(c)(2)(B) and Due Process requirements.................................................................................................................4

   C.   Gerber Life's proposed notice language does not conform to the required "neutral" description of Plaintiffs' claims or this lawsuit. .................................................................6

      i.   Gerber Life's proposed description of Plaintiffs' claims misconstrues the claims themselves and should be rejected. ..............................................................6

      ii.  The proposed "Section 7" presents misleading information not tied to this case, or even to the policy contracts Gerber Life invokes. ...................................8

IV.  CONCLUSION................................................................................................................... 11

# TABLE OF AUTHORITIES

**CASES**

*Aquayo v. United State Bank*, 2015 U.S. Dist. LEXIS 189723 (S.D. Cal. Aug. 6, 2015) ............ 10

*Contant v. Bank of Am. Corp.*, 2019 WL 12276060 (S.D.N.Y. July 29, 2019).............................. 5

*Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843 (2d Cir. 1980) ............................................ 1, 6, 10

*Gerber Life Insurance Company v. Logiudice, et al.*, No. 24-2757 (2d. Cir.),............................... 2

*Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019) .............................................. 7

*Hernandez v. Money Source Inc.*, 2021 WL 1402257 (E.D.N.Y. Mar. 5, 2021) ........................... 8

*Hines v. Equifax Info. Servs. LLC*, 2024 WL 4930116 (E.D.N.Y. Dec. 2, 2024) ................ 6, 8, 11

*In re Amla Litigation*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017)........................................................ 9

*In re AppHarvest Sec. Litig.*, 2024 WL 967258 (S.D.N.Y. Mar. 6, 2024) ..................................... 5

*In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004) ................................ 5

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017)............................................. 7, 9

*Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169 (S.D.N.Y. 2014)................................................... 5

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439 (S.D.N.Y. 2005) ................... 7

*Peni v. Daily Harvest, Inc.*, 2024 WL 4564198 (S.D.N.Y. Oct. 24, 2024) .................................... 5

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 731 N.E.2d 608 (2000) .................................................... 7

*Whelan v. Diligent Corp.*, 2025 WL 1018976 (S.D.N.Y. Apr. 4, 2025) ........................................ 5

**STATUTES**

N.Y. GBL §§ 349 and 350............................................................................................... 1, 7, 8

**RULES**

Fed. R. Civ. P. 23................................................................................................................*passim*

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024)......................................................................................... 8

## I. INTRODUCTION

After this Court's certification of the Classes, and the Second Circuit's denial of interlocutory appeal, Plaintiffs Emilie Norman and the Estate of Josephine Logiudice ("Plaintiffs") now seek the Court's approval, pursuant to Fed. R. Civ. P. 23(c)(2)(B), to notify the certified national Classes in this action. Plaintiffs and Defendant Gerber Life Insurance Company ("Gerber Life") (together, "the Parties") have engaged in extensive conferrals and reached agreement on the lion's share of Class notice issues. And while the Parties likewise agree on the vast majority of language in the Proposed Long-Form and Short-Form Notices, they disagree on discrete language suggested by Gerber Life.

The Court should approve Plaintiffs' proposed Notices, because Gerber Life's suggested language does not reflect an "impartial recital of the subject matter of the suit." *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980). First, Gerber Life makes the inapposite assertion that the claims, under N.Y. GBL §§ 349 and 350 and fraud, "entirely turn" on an allegation that all "policyholders" (*i.e.* Class members) "did not want life insurance." Not so. The claims turn on Gerber Life's *conduct*, not on what Plaintiffs or members subjectively wanted. One need only look at the elements of the claims themselves: under the GBL, Gerber Life's advertising will be judged under an "objective" reasonable consumer standard, and fraud reliance turns on the "trust" placed by Class Members in *Gerber Life's representations*.

Second, Gerber Life's proposed Section 7 improperly threatens Class members that it might rescind their policies, an outcome that is *not possible in this lawsuit*. The empty threat proposed in Section 7—aimed at forestalling Class member participation—should be rejected.

Thus, and as described herein, Plaintiffs respectfully request the Court to grant Rule 23(c)(2)(B) approval of the agreed Class Notice Plan and Plaintiffs' proposed Long-Form and

Short-Form Notices, which meet the requirements of Rule 23 and due process.

## II. BACKGROUND

### A. Class Certification

On September 27, 2024, the Court certified the proposed Classes pursuant to Rule 23(a) and Rule 23(b)(3), appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel. Doc. 318 (incorporating decision issued from the bench on September 27, 2024).

On October 11, 2024, Gerber Life filed for interlocutory appeal, pursuant to Fed. R. Civ. P. 23(f). *Gerber Life Insurance Company v. Logiudice, et al.*, No. 24-2757 (2d. Cir.), Dkt. 1. On March 6, 2025, the Second Circuit denied Gerber Life's Rule 23(f) Petition for interlocutory appeal of certification. *Id.* at Dkt. 47.[1]

### B. Class Definition

The Classes as proposed by Plaintiffs and certified by the Court, pursuant to Rule 23(a) and Rule 23(b)(3), on September 27, 2024 are defined as follows:

> All persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased a Gerber Life Grow Up Plan (the "Grow Up Class"); and
>
> All persons who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, purchased a Gerber Life College Plan (the "College Plan Class") (together, the "Classes").

Doc. 197 ("CC Mem."), 20; *see also* Docs. 196 ("CC Mot."); Doc. 318 (Order granting Plaintiffs' Motion for Class Certification).

During the Parties' conferral, an agreement was reached to seek Court approval of Rule 23(c)(1)(C) modifications to the class definition, excluding two discrete categories of persons: (1) Gerber Life employees who purchased Grow-Up Plan or College Plan policies during the class period and (2) recipients of "sponsored Grow-Up Plans" (*i.e.* purchased by a third party) who never

converted their sponsored policies to true, whole life policies.[1] Declaration of Natalie Lyons ("Lyons Dec."), ¶ 5.

The Parties continue to confer on the processes for identifying these discrete categories of persons for exclusion from the certified Classes but will be certain to exclude them from the list of Class members who are sent Notice. *Id.* at ¶ 7.

### C. Class Notice Plan

Since December 2024, the Parties have actively conferred on the Rule 23(c)(2)(B) Class Notice Plan, including through Gerber Life's transmission of updated class-wide data to Plaintiffs. Lyons Dec., ¶¶ 3-4.

Further, the Parties have reached agreement on the lion's share of Rule 23(c)(2)(B) Class Notice matters, including the vast majority of text in the proposed Long-Form and Short-Form Notices. *Id.* at ¶¶ 8-12.

### D. The Parties' agreed Class Notice Plan

**Class Administrator.** The Parties have chosen Kroll, a firm with extensive experience in facilitating and managing class notice and communications, to serve as Class Administrator. Lyons Dec., ¶ 9; Ex. A. As Administrator, Kroll will: manage the dissemination of Class Notice, described *infra*; create a dedicated case database to house all class member records and communications; provide IVR toll-free telephone support for class member inquiries; and create and maintain a case website that contains case information and key documents. *Id.* at ¶¶ 9-10.

**Class Notice.** Two notices will be made available to Class members: (1) Long-Form Notice

---

[1] As described by counsel for Gerber Life, a sponsored Grow-Up Plan is one that was originally purchased by another company, through the first couple of policy months (*i.e.* the "sponsored period"). Declaration of Natalie Lyons ("Lyons Dec."), ¶¶ 5-6. This is "usually" done as a "promotion" along with a "service the other company provides, such as baby photos." *Id.* At the end of the sponsored period, the policyholder has the option to convert the Grow-Up Plan into a true whole life Grow-Up Plan and begin directly paying the monthly premiums. *Id.* Policyholders who convert the Plan and begin paying premiums would not be excluded from the Grow Up Class. *Id.*

3

and (2) Short-Form Notice. Lyons Dec., Ex. B (Long-Form); Ex. C (Short-Form). The Long-Form Notice will be made available online through the dedicated website and emailed to Class members who have provided Gerber Life with their email address. The Short-Form Notice will be mailed by USPS first-class mail to Class members who have not provided Gerber Life with their email address. *Id.* at ¶ 11.

In the Parties' conferral, they have reached agreement on the vast majority of language and content in the Long-Form and Short-Form Notices. *Id.* at ¶ 12.

The Parties' sole disagreement—reflected through red-lined text in Exhibits A & B, discussed *infra*—regards language inserted by Gerber Life, *id.* at ¶ 13, improperly describing the claims for relief in this matter, and threatening consequences of Class members' participation in this litigation from actions Gerber Life may take outside of the lawsuit.

**Opt-Out Period.** Members will be given 90 days to opt-out of the Classes, pursuant to the instructions provided in the Notice(s) and on the class website. Lyons Dec., ¶ 14.

### III. ARGUMENT

**A. The Class Definition should be amended to exclude certain agreed upon individuals.**

Pursuant to Rule 23(c)(1)(C), and as agreed by the Parties, Plaintiffs seek the Court's amendment of the definition of the Certified Classes to exclude: (1) Gerber Life employees who purchased Grow-Up or College Plans; and (2) Recipients of "sponsored Grow-Up Plans" (*i.e.* purchased by a third party) who never converted their sponsored policies to whole life policies. *See supra* Section II(B) & n. 1.

**B. The Parties' agreed Notice Plan meets Rule 23(c)(2)(B) and Due Process requirements.**

The Parties' agreed Class Notice Plan meets the Rule 23(c)(2)(B) requirements for classes

4

certified under Rule 23(b)(3). R. 23(c)(2)(B) (requiring, "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort"). *See also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004) ("Conformity with the requirements of Rule 23(c)(2) fulfills the due process mandate." (citation omitted)); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 181 (S.D.N.Y. 2014) (same).

The Parties' Plan for Notice by email or postal mail is reflected in Rule 23(c) itself, which states: "[t]he notice may be by one or more of the following: United States mail, electronic means, *or* other appropriate means." R. 23(c)(2)(B) (emphasis added). Moreover, it is well-established that notice by email is sufficient under Rule 23, which encompasses the requisite due process safeguards, *In re Glob. Crossing Sec.*, 225 F.R.D. at 448, *supra*. *See, e.g.*, *Peni v. Daily Harvest, Inc.*, 2024 WL 4564198, at *6 (S.D.N.Y. Oct. 24, 2024) (email notice "appropriate"); *Whelan v. Diligent Corp.*, 2025 WL 1018976, at *4, *9 (S.D.N.Y. Apr. 4, 2025) (notice "mailed or emailed to all class members. . . reasonably calculated to reach all class members"); *In re AppHarvest Sec. Litig.*, 2024 WL 967258, at *3 (S.D.N.Y. Mar. 6, 2024) (notice sufficient where published on website and by "distribution of the Postcard Notice by e-mail (or first-class mail in those instances where no email address is available)" to members); *Contant v. Bank of Am. Corp.*, 2019 WL 12276060, at *7 (S.D.N.Y. July 29, 2019) (approving "direct notice via mail or electronic mail").

Finally, the agreed notice language—reflected by black text in Exhibits A & B—contains the content delineated by Rule 23(c)(2)(B), including: (1) a description of the claims and issues in this action, Ex. B., pp. 1-2; Ex. C, p. 2; (2) a description of Class membership, Ex. B, pp. 1-2; Ex. C, p. 2; (3) a description of each Class member's option to remain in the Class or submit an opt-out request, Ex. B, pp. 1-2; Ex. C, p. 3, (4) the method by which a Class member may opt out and

5

the deadlines by which to do so, Ex. B, p. 2; Ex. C, p. 3; (5) that Class members who do not opt out will remain in the Class and will be bound by any judgment or settlement in this case, Ex. B, pp. 1-2; Ex. C, p. 3; and (6) that Class members may, if desired, enter an appearance through counsel, Ex. B, p. 3.

Thus, the agreed Notice Plan amply provides for "the best notice that is practicable under the circumstances" to the nearly 1.5 million Class members, including "individual notice to all members who can be identified through reasonable effort." Rule 23(c)(B)(2).

### C. Gerber Life's proposed notice language does not conform to the required "neutral" description of Plaintiffs' claims or this lawsuit.

The Parties disagree on language suggested by Gerber Life in the draft Notices. As reflected by the red text in Exhibits B & C, Plaintiffs would strike the suggested language as inappropriate under Rule 23(c)(2), which requires that notice content be "scrupulous to respect judicial neutrality." *Hines v. Equifax Info. Servs. LLC*, 2024 WL 4930116, *4 (E.D.N.Y. Dec. 2, 2024) (citation omitted); *Erhardt*, 629 F.2d at 846 (class notice should "set[ ] forth *an impartial recital of the subject matter of the suit*" (emphasis added)).

#### i. Gerber Life's proposed description of Plaintiffs' claims misconstrues the claims themselves and should be rejected.

First, Gerber Life proposes that the description of Plaintiffs' claims state that all "policyholders" (*i.e.* Class members) "did not want life insurance." Ex. B, p. 2; Ex. C, p. 2. But this language misconstrues the claims themselves, which wholly regard Gerber Life's *marketing of the Plans*. The claims do not turn on what Plaintiffs or Class members subjectively want (or don't want). *See generally* Doc. 25 ("Compl."). They turn on Gerber Life's conduct.

Throughout the litigation, Plaintiffs have consistently challenged Gerber Life's *conduct* of deceptively and fraudulently marketing the Grow Up and College Plans as something they are not.

6

*See, e.g.*, Compl., ¶¶ 3, 4, 12, 14-18, 20, 23-24, 29-35, 37-40, 43-44 (detailing *Gerber Life's* misleading conduct); *see also* CC Mem., pp. 1-2, 3-19; Doc. 337 ("MSJ"), pp. 2-10; Doc. 358 ("MSJ Opp."), pp. 4, 8-15, 18-21.[2] To the extent Plaintiffs have put forth arguments or evidence of consumers' point-of-view, it is offered in support of claims that Gerber Life acted deceptively and fraudulently in marketing the Plans. For instance, evidence about the negative perception of child life insurance is relevant to Gerber Life's *knowledge* of that perception and, thus, its motivation to deceive consumers about the nature of the Grow Up Plan. *See, e.g.*, MSJ, pp. 6, 16, 26; MSJ Opp., pp. 32-34.

Surely, if Gerber Life were correct that "the entirety of this action" actually "turns on what class members wanted," it would point to such a requirement under the GBL or common law fraud. Doc. 370 ("Def. Ltr."), 2. It hasn't, because it can't. *See generally id.* Under the GBL's objective reasonable consumer standard, consumers' subjective understanding or belief is patently irrelevant to Gerber Life's liability, and therefore, to the GBL claim itself. *See, e.g.*, *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 266 (E.D.N.Y. 2019) (on GBL claim, "the individual reason for purchasing a product becomes irrelevant and subsumed under the reasonable consumer standard, *i.e.*, whether the deception would likely have misled someone, and not, whether it in fact did").[3]

---

[2] Gerber Life misses the point when it cites the Opposition to its Motion to Strike Plaintiffs' Expert, Kent Barrett (Doc. 291)—a motion that was denied by the Court, Doc. 318. Def. Ltr., 2. There, Plaintiffs argued that this is a case, like others, where Plaintiffs and the Class "allege that a product or services [is] essentially *worthless*" for its advertised purpose. Doc. 291, 12 (collecting cases). *See also* MSJ, 2, 20-23. This, again, demonstrates that the liability and damages theories turn on *Gerber Life's advertisements*, not the subjective wants of Plaintiffs and Class members.

[3] Gerber Life makes an inapposite attempt to distinguish *Hasemann*, Def. Ltr., 2, because it cannot counter the well-established law on GBL causation—which does not care about what a consumer saw, thought, or felt about the deceptive conduct. Rather, the GBL looks to the objective reasonable consumer's view on the defendant's conduct. *See Hasemann*, 331 F.R.D. at 266, *supra*; *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F. Supp. 2d 439, 445–46 (S.D.N.Y. 2005) (rejecting requirement that "plaintiff saw or heard" the ads) ("New York courts, in keeping with the prophylactic purposes of § 349. . . require[ ] only that the practice complained of was objectively misleading or deceptive and that he had suffered injury 'as a result' of the practice" (citation omitted)); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 531 (E.D.N.Y. 2017) ("Liability under New York General Business Law §§ 349–350 does not depend on . . . whether the product met their personal, subjective expectations."); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 30, 731 N.E.2d 608 (2000) (GBL causation requires only that "defendant's material deception caused them to suffer a [pecuniary] loss.. . . Nothing more is required").

The fraud claim likewise turns on Gerber Life's knowing conduct. MSJ, 23 (requiring "a material misrepresentation of fact" *by Gerber Life*, "knowledge of its falsity" *by Gerber Life*, "an intent to induce reliance" *by Gerber Life* (quoting *Hernandez v. Money Source Inc.*, 2021 WL 1402257, at *9 (E.D.N.Y. Mar. 5, 2021))). And reliance under fraud does not care about what Class members *wanted*; it asks whether they *relied on* Gerber Life's fraudulent representations—*e.g.*, that child life insurance is a "plan" for when a child "grows up" and adult endowment life insurance is a "plan" for "college." Thus, "reliance" is concerned not with what members *want* but with the *trust* imbued by members in *Gerber Life's representations*. *See* Black's Law Dictionary (12th ed. 2024) (Definition of "reliance": "Dependence or trust by a person, esp. when combined with action based on that dependence or trust").

Gerber Life insistence that the claims turn on an assertion that all "policyholders did not want life insurance" rather reflects *its own argument* that Class members understood what they were purchasing and *did* want child life insurance and adult endowment life insurance when they purchased the Grow Up and College Plans. *See, e.g.*, Doc. 200 (CC Opp.), pp. 7-8; Doc. 333 (Def. MSJ), pp. 7-9; Doc. 355 (Def. MSJ Opp.), p. 35 ("most [consumers] understood and wanted their policies"). But Gerber Life's arguments *against* Plaintiffs' claims do not comprise "neutral" descriptions of the claims themselves.

Gerber Life's proposed language does not reflect a "neutral" or "impartial" description of Plaintiffs' and members' affirmative claims and should be rejected. *Hines*, 2024 WL 4930116, at *4.

> ii. **The proposed "Section 7" presents misleading information not tied to this case, or even to the policy contracts Gerber Life invokes.**

Second, Gerber Life proposes an additional "Section 7" improperly stating that an award under Plaintiffs' GBL and fraud claims could result in rescission or loss of coverage under Class

8

members' Grow Up and College Plan policy contracts. But the proposed Section 7 does not "neutrally" reflect the claims for relief in this case—or, indeed, any possible outcome in this lawsuit, which regards *Gerber Life's* marketing, not the policies that Class members received when they purchased the Grow Up and College Plans.

Indeed, the proposed Section 7 misleadingly forewarns members that any dispositive action *in this case* would have the consequence of rescinding their policy contracts and loss of their insurance coverage under those policy contracts:

> 7. If I don't exclude myself, will I get to keep my Grow Up Plan or College Plan?
>
> If you do not exclude yourself from the Classes and the Court rules in favor of the Class, you may obtain a monetary payout, but **your insurance plan may/will be rescinded** and **you may/will lose any insurance coverage or benefits (including cash value)** thereunder.

Ex. B, p. 3 (emphasis added).

But this case does not regard Plaintiffs' or Class members' policy contracts, as the Court has repeatedly emphasized. *See* Doc. 338-76, 57:1-6 (Court's denial of Rule 12 dismissal) ("policy contracts" after purchase "have little to do with the GBL claims because it's more having to do with the juxtaposition of the various marketing material and representations that Gerber makes"; "this is not a breach of contract case"). The Court again emphasized the irrelevance of Plaintiffs' policies its Order on Plaintiff Norman's Rule 25 Substitution Motion: "G.B.L. §§ 349 and 350 claims do not require present ownership of the purchased product; otherwise to maintain a claim, consumers would be prohibited from throwing away wipes that aren't actually flushable, *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017), or the hair product that burned their scalp. *See In re Amla Litigation*, 282 F. Supp. 3d 751 (S.D.N.Y. 2017)." Doc. 191, 5 (additionally noting, "Norman herself no longer owns her policies" and "many class members no longer presently own their policies, because about 50% of the Grow Up Plan policies . . . lapse within the first three

9

years of the initial purchase").

Moreover, to seek rescission of Class members' policies *in this case*, Gerber Life was required to make a counterclaim for that relief. It didn't. *See generally* Docket, No. 7:20-cv-03254-KMK. Thus, its proposed Section 7 *neither* "sets forth an impartial recital of the subject matter of the suit" *nor* "informs members" of their rights in this "litigation." *Erhardt*, 629 F.2d at 846. Rather, it attempts to warn off Class members from participating in this case based on something Gerber Life might do outside of this lawsuit.

And contrary to its assertions otherwise, Gerber Life's proposed Section 7 does not, in fact, "alert" members regarding any actual "interests" that members have in or outside of this case. *Erhardt*, 629 F.2d at 846.[4] This is because the purported rescissionary consequences of Class participation *have no basis whatsoever*. Gerber Life supposes it will be able to terminate current policies by treating awarded damages—measured as a refund or percentage of *premiums paid*— as unpaid premiums under the policy. Def. Ltr., 3. But there is no such language in the policies. *See generally* Doc. 35-2 (cited by Defendant).[5] Rather, the policy's "Termination" clause states that Gerber Life can terminate when "*a past due premium* remains unpaid," not when a policyholder is awarded damages in a lawsuit based on premiums previously and fully paid. *Id.* at 11. And while this termination effort will not (and cannot) happen in this lawsuit; surely, the policy contracts demonstrate that any such effort, as described by Gerber Life, will subject it to another

---

[4] Gerber Life cites *Aquayo v. United State Bank*, 2015 U.S. Dist. LEXIS 189723 (S.D. Cal. Aug. 6, 2015) as its sole direct support for the notion that members should be informed of its intention to seek policy termination based on a monetary award here. But *Aquayo* offers no such support. There, the debt relief ordered in the case had "potential" tax consequences, *id.* at *3-*5, and it was proper to inform them of those potential consequences *directly emanating* from court-ordered relief so that members' "individual interests were protected." *Id.* at *4. Here, Gerber Life is threatening to take *independent action* outside the case—which, by definition, is not a necessary consequence of awarded relief here. As it admits, such action will be prompted by Gerber Life's bottom line. Def. Ltr., 3.

[5] Plaintiffs do not concede that the document attached as Doc. 35-2 to Defendant's Motion to Dismiss is a true and accurate copy of either Plaintiffs' policy documents.

10

lawsuit for breach of the policy contract. But that isn't this case.

Thus, on Gerber Life's proposed Section 7, the Court should heed the Second Circuit's warning that a class notice must "safeguard" Class members from such "unauthorized, misleading communications from the parties or their counsel." *Erhardt*, 629 F.2d at 846 (emphasizing, "notices to class members which are factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice").

So the proposed Section 7 is unsupported by the case itself, and finds no support otherwise (indeed it suggests Gerber Life plans to engage in further illegal conduct), and its inclusion would violate the requirement that notice be "scrupulous to respect judicial neutrality." *Hines*, 2024 WL 4930116, at *4.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court amend the Class definition to exclude Gerber Life employees and recipients of "sponsored" Grow Up Plans, and approve the Class Notice Plan as agreed by the Parties, including Plaintiffs' proposed Long-Form and Short-Form Class Notices, which reflect the required "neutral" and "impartial" description of the case itself, as well as Plaintiffs' and Class members' claims for relief in the case.

Dated: August 22, 2025                    Respectfully submitted,

                                                    */s/ Lynn A. Toops*
                                                    Lynn A. Toops, *pro hac vice*
                                                    Natalie Lyons, *pro hac vice*
                                                    **COHENMALAD, LLP**
                                                    One Indiana Square
                                                    Suite 1400
                                                    Indianapolis, IN 46204
                                                    (317) 636-6481
                                                    Fax: (317) 636-2593

ltoops@cohenmalad.com
nlyons@cohenmalad.com

J. Gerard Stranch, IV, *pro hac vice*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com

Jeffrey Kaliel, *pro hac vice*
Amanda Rosenberg, *pro hac vice*
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, D.C.  20005
Ph: 202-350-4783
Fax: 202-615-3948
jkaliel@kalielpllc.com
arosenberg@kalielpllc.com

James J. Bilsborrow
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, New York 10003
Tel: (212) 558-5500
jbilsborrow@weitzlux.com

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2025 I filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel registered with ECF.

                                                    _/s/ Lynn A. Toops_
                                                    Lynn A. Toops