**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ESTATE OF JOSEPHINE LOGIUDICE and EMILIE NORMAN,<br><br>                Plaintiffs,<br>      v.<br><br>GERBER LIFE INSURANCE COMPANY,<br><br>                Defendant. | No. 7:20-cv-03254-KMK<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**GERBER LIFE INSURANCE COMPANY'S MOTION TO DECERTIFY**

Eric W. Richardson, *pro hac vice*
Joseph M. Brunner, *pro hac vice*
Brent D. Craft, *pro hac vice*
Emily E. St. Cyr, *pro hac vice*
Petra G. Bergman, *pro hac vice*
**VORYS SATER SEYMOUR AND**
**PEASE LLP**
301 East Fourth Street, Suite 3500
Cincinnati, OH  45202
Telephone:  (513) 723-4019
Facsimile:  (513) 852-7885

Robert J. Giuffra, Jr.
Nicole W. Friedlander
Nicholas F. Menillo
**SULLIVAN & CROMWELL LLP**
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

Kamil R. Shields
**SULLIVAN & CROMWELL LLP**
1700 New York Avenue N.W.
Suite 700
Washington, D.C.  20006
Telephone:  (202) 956-7500
Facsimile:  (202) 956-7676

*Counsel for Defendant Gerber Life*
*Insurance Company*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................2

LEGAL STANDARD .........................................................................................................3

ARGUMENT......................................................................................................................3

      I.      The Voluntary Payment Doctrine Raises Individualized Inquiries
            That Defeat Predominance..........................................................................................3

      II.     Predominance Is Not Satisfied Because The Alleged
            Misrepresentations Are Not Uniform ........................................................................8

CONCLUSION ..................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Cablevision Consumer Litig.*,
   2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) ...........................................................................7

*Comcast Corp.* v. *Behrend*,
   569 U.S. 27 (2013) ....................................................................................................................3

*Curtis* v. *Loether*,
   415 U.S. 189 (1974) ...................................................................................................................6

*Dupler* v. *Costco Wholesale Corp.*,
   249 F.R.D. 29 (E.D.N.Y. 2008) .................................................................................................7

*Emilio* v. *Sprint Spectrum L.P.*,
   2017 WL 3208535 (S.D.N.Y. July 27, 2017) .........................................................................4, 7

*Goldemberg* v. *Johnson & Johnson Consumer Cos., Inc.*,
   317 F.R.D. 374 (S.D.N.Y. 2016) ...........................................................................................9, 10

*Hasemann* v. *Gerber Prods. Co.*,
   331 F.R.D. 239 (E.D.N.Y. 2019) .............................................................................................10

*In re INC/Viratek Sec. Litig.*,
   1996 WL 34448146 (S.D.N.Y. July 15, 1996) ..........................................................................5

*Jin* v. *Shanghai Original, Inc.*,
   990 F.3d 251 (2d Cir. 2021) .......................................................................................................3

*Kronenberg* v. *Allstate Ins. Co.*,
   743 F. Supp. 3d 465 (E.D.N.Y. 2024) .......................................................................................7

*Kurtz* v. *Kimberly-Clark Corp.*,
   321 F.R.D. 482 (E.D.N.Y. 2017) ...............................................................................................7

*Maroney* v. *Woodstream Corp.*,
   2025 WL 945874 (S.D.N.Y. Mar. 28, 2025) ..........................................................................4, 7

*Mazzei* v. *Money Store*,
   829 F.3d 260 (2d Cir. 2016) .....................................................................................................1, 3

*McLaughlin* v. *Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) .......................................................................................................6

*Moore* v. *PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002).............................................................................................10

*Newman* v. *RCN Telecom Servs., Inc.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ............................................................................................7

*Perez* v. *Isabella Geriatric Ctr., Inc.*,
  2016 WL 5719802 (S.D.N.Y. Sept. 30, 2016)......................................................................5

*In re Scotts EZ Seed Litig.*,
  304 F.R.D. 397 (S.D.N.Y. 2015) ..........................................................................................7

*Singleton* v. *Fifth Generation, Inc.*,
  2017 WL 5001444 (N.D.N.Y. Sept. 27, 2017) ....................................................................10

*Solomon* v. *Bell Atl. Corp.*,
  9 A.D.3d 49 (1st Dep't 2004) ...............................................................................................1

*In re Term Commodities Cotton Futures Litig.*,
  2020 WL 5849142 (S.D.N.Y. Sept. 30, 2020)......................................................................6

*Vaccariello* v. *XM Satellite Radio, Inc.*,
  295 F.R.D. 62 (S.D.N.Y. 2013) ............................................................................................6

*Wal-Mart Stores, Inc.* v. *Dukes*,
  564 U.S. 338 (2011).............................................................................................................6

**Statutes**

28 U.S.C. § 2072(b) .............................................................................................................6, 10

N.Y. Gen. Bus. Law. § 349...............................................................................................1, 2, 7

N.Y. Gen. Bus. Law. § 350......................................................................................................1, 2

N.Y. Ins. L. § 3209(b)...............................................................................................................5

N.Y. Ins. L. § 3209(i)................................................................................................................5

N.Y. Ins. L. § 3209(k)...............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 23(b)(3)..............................................................................................................3

Ga. Comp. R. & Regs. 120-2-11-.05 .........................................................................................4

Ga. Comp. R. & Regs. 120-2-11-.10 .........................................................................................4

-iv-

Or. Admin. R. 742.009.................................................................................................................4

U.S. Const. amend. VII........................................................................................................6, 10

## PRELIMINARY STATEMENT

Plaintiffs bring N.Y. GBL §§ 349-350 and fraudulent inducement claims asserting that Gerber Life's advertising misled purchasers of more than two million Grow-Up Plan and College Plan policies over a six-year period to believe the products were solely savings or investment vehicles rather than life insurance with a cash value feature. Plaintiffs rely on over 3,000 separate ads and marketing materials, all of which state insurance regulators reviewed and found not misleading to an ordinary consumer. *See infra* n.2. After viewing only a small subset of ads, each purchaser went through an individualized application process and received state-mandated disclosures about the policies' death benefit and cash value features. Each purchaser also had a 30-day "free look" period, mandated by the law of most states, to evaluate the disclosures and obtain a full refund if they chose to.

This Court's summary judgment decision makes clear that Plaintiffs cannot carry their burden to maintain certification. *See Mazzei* v. *Money Store*, 829 F.3d 260, 270 (2d Cir. 2016) (party seeking to maintain certification "retain[s]" burden to show Rule 23 remains satisfied). *First*, unlike in a typical consumer case involving mislabeled retail goods or services, the state-mandated application process and disclosure regime here makes the voluntary payment doctrine a central defense. That doctrine "bars recovery of payments voluntarily made with full knowledge of the facts." *Solomon* v. *Bell Atl. Corp.*, 9 A.D.3d 49, 55 (1st Dep't 2004) (internal quotation marks omitted). At summary judgment, this Court correctly ruled that this defense turns on each buyer's "subjective awareness of the facts"—a quintessential individualized issue. (Dkt. 374 ("SJ Op.") at 67.) The "subjective awareness" of hundreds of thousands of consumers cannot be determined based on two named plaintiffs (one of whom is deceased) or paid experts. As such, courts routinely deny class certification when the doctrine is a core defense. *See* cases cited *infra* at 6-7.

*Second*, certification was premised on the finding that the ads were "materially uniform," but at summary judgment, the Court correctly recognized the opposite. (Dkt. 320 ("Cert. Op.") at 19.) The Court explained that a jury must consider the particular language of each ad in deciding whether it is misleading. (SJ Op. at 56-59.) Case law is clear that, without a uniform, class-wide misrepresentation, the individual question of which class members saw which ads defeats predominance. *See infra* at 9-10.

For both of these reasons, the classes should be decertified.

## BACKGROUND

On September 27, 2024, the Court certified two Rule 23(b)(3) classes—one under GBL §§ 349 and 350 and the other for fraudulent inducement. Gerber Life raised the voluntary payment doctrine in arguing against both typicality and predominance,[1] but the Court addressed it only as to the "not highly demanding" typicality element: "It's not entirely clear that this defense will be atypical. It's possible that other class members were in receipt of disclosures prior to their initial policy payment. . . ." (Cert. Op. at 18, 24-25.) It also rejected Gerber Life's argument that variations across the 3,000 challenged ads raised individualized issues as to who saw which ads, if any, reasoning that messaging was "materially uniform." (*Id.* at 19, 38-42.)

On September 18, 2025, the Court largely denied cross motions for summary judgment. It found a factual dispute as to whether the ads were misleading, explaining that the language used in the ads must be evaluated "in context." (SJ Op. at 57.) The Court also recognized the voluntary payment doctrine as barring "payments made after the buyer has a subjective awareness of the

---

[1] Plaintiffs are wrong that Gerber Life did not raise the voluntary payment doctrine in opposing predominance. *See* Dkt. 200 at 26 (arguing "[m]aterial differences" in "the voluntary payment doctrine"), 32-35 (arguing predominance defeated because disclosures varied). In response, Plaintiffs too argued that the voluntary payment doctrine is a "common defense that Gerber could raise as to the whole class." (Dkt. 324 at 32:14-19.)

facts," and held: "Whether Plaintiffs read and understood these disclosures, and whether those disclosures sufficiently apprised them of the nature of the products they were purchasing, is a question for the jury to determine." (*Id.* at 67, 68.)

### LEGAL STANDARD

The district court has an "affirmative duty," *Mazzei*, 829 F.3d at 266 (internal quotation marks omitted), to "reassess its class rulings as the case develops" to ensure continued compliance with Rule 23 until final judgment, *Jin* v. *Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021). Here, certification is proper under Rule 23(b)(3) only if Plaintiffs show that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is "more demanding" than commonality or typicality, requiring courts to conduct a "rigorous analysis." *Comcast Corp.* v. *Behrend*, 569 U.S. 27, 33-34 (2013).

### ARGUMENT

**I.   The Voluntary Payment Doctrine Raises Individualized Inquiries That Defeat Predominance.**

The Court's summary judgment decision clarifies a critically important legal standard for trial: the voluntary payment doctrine turns on each purchaser's "subjective awareness" of the facts. (SJ Op. at 67-68.) Accordingly, Plaintiffs are wrong that "nothing . . . has changed." (Dkt. 395 at 1.) When certifying the classes, the Court did not expressly decide the parties' dispute over whether the voluntary payment doctrine defeated predominance, holding only that this defense did not render named Plaintiffs atypical because other class members may also be subject to that defense. In turn, at summary judgment, Gerber Life argued that the voluntary payment doctrine barred recovery because customers should have read the state-mandated disclosures— they either (i) read them and "had knowledge that the policies were life insurance," *or* (ii) cannot recover due to "lack of diligence." (Dkt. 333 at 32.) The Court *rejected* this class-wide approach,

instead finding a "subjective" test applicable consistent with New York law. (SJ Op. at 67.) *See also Maroney* v. *Woodstream Corp.*, 2025 WL 945874, at \*8 n.3 (S.D.N.Y. Mar. 28, 2025) (Karas, J.) (voluntary payment doctrine turns on plaintiff's individual conduct); *Emilio* v. *Sprint Spectrum L.P.*, 2017 WL 3208535, at \*5 (S.D.N.Y. July 27, 2017) (Oetken, J.) (voluntary payment doctrine depends on how plaintiff "weighed various factors").

As a subjective test, the voluntary payment doctrine turns on what each class member understood about the product. Unlike retail products or services purchased right when the ads are seen, the purchases here were made after several individualized steps. After viewing the state-approved ads,[2] consumers underwent an application process—by mail, by phone, or online— through which they could obtain more information about the policy. The application asked about the health and "existing life insurance" of the "insured," which they may have understood to mean they were buying life insurance. (Def.'s 56.1 ¶¶ 61, 94, 163.) Phone applicants spoke with a Gerber Life representative—like Plaintiff Logiudice, who said on a recorded line that she knew the Grow-Up Plan was life insurance. (Def.'s 56.1 ¶ 159.) Some buyers had additional contacts with the company. For example, Gerber Life contacted Plaintiff Norman repeatedly to remind her to activate her policy by paying the first premium. (Def.'s 56.1 ¶¶ 254, 262, 323.)

Also unlike a typical case involving consumer products or services, each consumer received state-mandated disclosures intended to prevent the very misunderstanding that Plaintiffs now claim. *See* N.Y. Ins. L. § 3209(k) (requiring disclosures designed "to enable consumers to

---

[2]    Oregon, West Virginia, and Georgia regulators reviewed all ads to assess whether they were misleading to an ordinary consumer. (Dkt. 340 ("Def.'s 56.1") ¶¶ 22-30.) *See* W. Va. Code R. § 114-11-4 (prohibiting ads with "capacity or tendency to mislead or deceive . . . a person of average education or intelligence"); Ga. Comp. R. & Regs. 120-2-11-.05, -.10 (same); Or. Admin. R. 742.009 (regulator "shall disapprove" ads that are "false, deceptive or misleading"). Regulators also reviewed the ads in market-conduct exams, and Gerber Life incorporated their feedback into certain of the ads Plaintiffs continue to challenge. (*See* Dkt. 200-7 ("Nickel Report") at 33-35.)

understand the operation of the policy"); *see also* NAIC Life Insurance Disclosure Model Regulation, Model Law 580, § 2(A) ("purpose[s]" of disclosures includes to "improve the buyer's understanding of the basic features of the policy").[3]  Every purchaser received the Life Insurance Buyer's Guide, developed by NAIC "in partnership with consumer groups, regulators and industry participants," to which NAIC applies readability metrics to ensure a "typical insurance consumer" knows what they are buying.  (Nickel Report at 36-37.)  *See also* N.Y. Ins. L. § 3209(b), (i) (mandating Buyer's Guide and other disclosures).  Some received additional required disclosures that vary state-by-state.  (Def.'s 56.1 ¶ 37.)

In analyzing the voluntary payment doctrine, this Court correctly evaluated evidence of Logiudice's and Norman's individual purchasing decisions, including their testimony that they chose not to read the "after-the-fact disclosures."  (SJ Op. at 68; *see also id.* at 7-8 (describing Logiudice's and Norman's respective "[e]xperiences" based on their applications, written and oral communications, and testimony).)  Gerber Life is entitled to present the same individualized evidence for each class member—their application, written communications, recorded calls, disclosures received, and testimony—and have a jury assess the credibility of any claim by absent class members to have misunderstood the product.[4]

---

[3]     All 50 states have adopted disclosure regimes; many follow the NAIC model law.  (Nickel Report at 5-9, 36-37.)

[4]     Gerber Life's right to present this evidence is why courts routinely bifurcate trials in securities actions, allowing defendants to rebut individualized issues in a second phase of trial. *See, e.g.*, *In re INC/Viratek Sec. Litig.*, 1996 WL 34448146, at *1-2 (S.D.N.Y. July 15, 1996) (bifurcating so individualized reliance and damages could be tried separately).  Gerber Life reiterates its request to direct Plaintiffs to propose a trial plan, which will underscore that a class trial is not feasible here. *See Perez* v. *Isabella Geriatric Ctr., Inc.*, 2016 WL 5719802, at *4 (S.D.N.Y. Sept. 30, 2016) (court can decertify if Plaintiffs "fail to proffer a workable trial plan").

The class action device cannot be used to alter that substantive right under the Rules Enabling Act, 28 U.S.C. § 2072(b), and the Seventh Amendment. *See Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 366-67 (2011) ("[A] class cannot be certified on the premise that [a defendant] will not be entitled to litigate" its defenses); *Curtis* v. *Loether*, 415 U.S. 189, 194 (1974) (Seventh Amendment jury right applies "if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law"); *McLaughlin* v. *Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (decertifying where collective damages approach ignored individualized issues, thus "offend[ing] . . . the Rules Enabling Act"), *abrogated on other grounds by Bridge* v. *Phx. Bond & Indem. Co.,* 553 U.S. 639 (2008).

Plaintiffs cannot avoid an individualized fact inquiry by imputation from two named plaintiffs or through experts. What Logiudice and Norman read, heard, and understood, and their choices not to read the disclosures, is not competent evidence as to what any other absent class member did or understood. Further, any credibility determination a jury makes about Logiudice's and Norman's testimony says nothing about that of any other class member. *See, e.g.*, *McLaughlin*, 522 F.3d at 223-25 (decertifying where "[i]ndividualized proof" needed because "each plaintiff . . . could have elected to purchase [the product] for any number of reasons"). Experts also "cannot testify" about individuals' "state of mind." *In re Term Commodities Cotton Futures Litig.*, 2020 WL 5849142, at *14 (S.D.N.Y. Sept. 30, 2020) (collecting cases). No disclosed expert purports to do so; Plaintiffs' experts instead focus on the "reasonable" consumer, which is irrelevant to what individual class members *subjectively* understood.

Courts routinely hold that individualized inquiries involving the voluntary payment doctrine defeat predominance. For instance, in *Vaccariello* v. *XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013), Judge Owen denied certification because, under the voluntary payment

doctrine, determining which absent class members knew of the allegedly misrepresented renewal terms required individualized inquiries, defeating predominance.  Likewise, in *Kronenberg* v. *Allstate Ins. Co.*, 743 F. Supp. 3d 465, 498 & n.28 (E.D.N.Y. 2024), the court found that the doctrine "would likely operate as an individualized defense to Section 349 claims" depending on each insured's understanding of Allstate's allegedly opaque valuation process.  *See also Newman* v. *RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (recommending certification denial in part because the doctrine defeated predominance); *Emilio*, 2017 WL 3208535, at *10 (no predominance where class members' decision whether to pay bills required "individualized damages calculations" in light of the doctrine).

Plaintiffs' cases do not support their burden of maintaining certification.  *See In re Cablevision Consumer Litig.*, 2014 WL 1330546, at *11 (E.D.N.Y. Mar. 31, 2014) (finding predominance because all customers were subject to terms of service that may have "contracted around" the doctrine); *Dupler* v. *Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008) (voluntary payment doctrine required "no complex, individualized assessment" because defense turned on whether customer had "multiple renewals"); *Kurtz* v. *Kimberly-Clark Corp.*, 321 F.R.D. 482, 534-35 (E.D.N.Y. 2017) (assessed only as to typicality); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 405-06 (S.D.N.Y. 2015) (Bricetti, J.) (same); *Maroney*, 2025 WL 945874, at *8 (same).  None involved anything remotely like the individualized application process and state review and disclosure regime that brings the voluntary payment doctrine to the forefront here.

At the November 19, 2025 conference (at 41:1-5), Plaintiffs pivoted to a new theory—that all class members were deceived because it was "impossible to have a full understanding of the facts based on the ads, the experts, and the disclosures."  But that tactic does not satisfy Plaintiffs' burden.  Any claim that 100% of consumers were subjectively misled is conclusively refuted by

-7-

Plaintiffs' own evidence:  their survey expert found 27% and 13% of respondents understood the Grow-Up Plan and College Plan, respectively, to be "entirely a form of life insurance" *based on the ads alone*.  (Dkt. 197-54 at 13-14.)[5]  And that was *without* having seen the industry-wide disclosures designed by state insurance regulators to ensure that consumers were fully informed.

## II.    Predominance Is Not Satisfied Because The Alleged Misrepresentations Are Not Uniform.

The Court certified the classes on the premise that Gerber Life deployed a "common method of marketing."  (Cert. Op. at 22:11-16.)  The Court reasoned that class members were exposed to a "consistent theme of deceptive advertising" and the "same material omissions," pointing to shared elements such as the Gerber logo, plan names, and "materially uniform messaging" required by the "so-called style guide."  (*Id.* at 19:1-25.)

At summary judgment, the Court reversed course, holding that whether the ads were misleading is a fact question for the jury that depends on the specific wording and layout of particular ads.  (SJ Op. at 56-59.)  It held, for instance, that a jury could, but was not required to, find terms such as "nest egg" and "cash value" are not puffery because a "reasonable customer" could interpret them as representations "that the products can serve as savings vehicles."  (SJ Op. at 57.)  The Court also found a jury could, but was not required to, find "images comparing the College Plan to other savings vehicles suggest[] the College Plan is an appropriate savings tool."  (SJ Op. at 58.)  Further, the Court found that use of the term "life insurance" in the ads could be considered by a jury, but "depends upon factors such as the font size and placement of the disclaimer as well as the relative emphasis placed on the disclaimer and the allegedly

---

[5]     If, on the other hand, Plaintiffs meant to argue that their theory is that a *reasonable* consumer could not have been fully informed based on the ads and disclosures, that argument rests on an objective standard, defying the Court's direction that a "subjective" test applies.

misleading statement." (SJ Op. at 59.)  Because the ads used different phrases and layouts, the jury's assessment will necessarily vary ad to ad.  For example, phrases such as "nest egg," "head start," and "financial future," appear in only about 21%, 43%, and 26% of Grow-Up Plan ads, respectively.  (Dkt. No. 200-31 ¶ 9.)[6]

The lack of specific, uniform misrepresentations precludes certification because it raises individualized questions as to who saw which ads.  As Judge Román correctly held, under the GBL, unless all members of the class saw the same ads, "questions of individual members' exposure to the allegedly deceptive advertising" will "predominate."  *Goldemberg* v. *Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 389 (S.D.N.Y. 2016) (citing *Solomon*, 9 A.D.3d at 53) (same is true if "the content of the 'advertising varied widely and not all the ad[s] contained the alleged misrepresentations'").  As to fraudulent inducement, the need to prove reliance ordinarily precludes certification, but the Court invoked a narrow exception that allows reliance to be inferred if a uniform material misrepresentation is made to the entire class.  (Cert. Op. at 17:16-23; 38:13-42:9.)  Based on the summary judgment decision, however, the jury is free to conclude that some ads are misleading and others are not, raising an individualized question of who was exposed to and relied on whichever ads the jury finds misleading.  Exposure and reliance cannot be presumed:  for example, the Court looked to Logiudice and Norman's "testimony" that they "saw and relied upon" Gerber Life's ads in assessing whether they were injured.  (*Id.* at 63; *see also* Def.'s 56.1 ¶¶ 212, 289-90 (named Plaintiffs testified they never saw ads in complaint).)

---

[6]    Plaintiffs' citation to a Style Guide for the ads does not satisfy their burden to show the ads are uniform.  Plaintiffs must prove the *ads* are misleading, not just a 'scheme' set forth in the Style Guide.  Moreover, Plaintiffs assert that swathes of ads *violated* the Style Guide, including through the particular ways in which the ads used terms such as "nest egg," "cash value," and "plan"; the Gerber logo; and comparisons to 529s.  (Dkt. 337 at 15, 24, 25.)

The term "nest egg," for example, appears in only 21% of the ads but is a centerpiece of Plaintiffs' case. If the jury finds only the "nest egg" ads misleading, Plaintiffs cannot prove a GBL injury[7] or actual reliance for fraudulent inducement as to class members who only saw the other 79% (or none) of the ads (including Norman, who testified she never saw that phrase). (Def.'s 56.1 ¶ 295.) *Cf.* SJ Op. at 63 (collecting cases dismissing claims for failure to allege exposure to ads at issue). Permitting a class to proceed without taking account of these individualized issues would deprive Gerber Life of its substantive right to a jury trial on GBL injury and reliance for fraudulent inducement, in violation of the Rules Enabling Act and the Seventh Amendment. *See* cases cited *supra* at 6. That is why courts typically do not certify claims based on ads with variable language. *See, e.g.*, *Moore* v. *PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (denying certification of alleged scheme to market life insurance as a savings vehicle for failure to show "uniform misrepresentations made to all members of the class").[8]

## CONCLUSION

For the foregoing reasons, the Court should grant Gerber Life's motion to decertify.

---

[7]     Cases such as *Hasemann* v. *Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019), hold that purchasers who did not see a misleading ad may still have a GBL injury where the misleading ad enabled a company to charge a higher price to everyone. But Plaintiffs have disclaimed such a "price premium theory" (Pls' Cert. Br. at 28; Dkt. 269 at 14), and offer no damages model for one. Rather, Plaintiffs argue class members misunderstood what they were buying: "Class members paid for one thing and received something entirely different." (Dkt. 337 at 20.) Given Plaintiffs' theory of liability, purchasers who saw no misleading statements were not injured.

[8]     Even if the Gerber Life logo and product names are uniform, that does not permit claims based on variable ad elements. Absent decertification in full, claims based on variable language should be trimmed from the class. *See Singleton* v. *Fifth Generation, Inc.*, 2017 WL 5001444, at *17 n.17 (N.D.N.Y. Sept. 27, 2017) (finding only the uniform "handmade" statement suitable for class, not varied language); *Goldemberg*, 317 F.R.D. at 389 (similar). If the Court limits the class to uniform elements, Gerber Life respectfully seeks leave to renew its summary judgment motion.

-11-

Dated:  December 12, 2025

|  |  |
|---|---|
|  | */s/ Robert J. Giuffra, Jr.* |
| Eric W. Richardson, *pro hac vice* | Robert J. Giuffra, Jr. |
| Joseph M. Brunner, *pro hac vice* | Nicole W. Friedlander |
| Brent D. Craft, *pro hac vice* | Nicholas F. Menillo |
| Emily E. St. Cyr, *pro hac vice* | **SULLIVAN & CROMWELL LLP** |
| Petra G. Bergman, *pro hac vice* | 125 Broad Street |
| **VORYS SATER SEYMOUR AND** | New York, New York  10004 |
| **PEASE LLP** | Telephone:  (212) 558-4000 |
| 301 East Fourth Street, Suite 3500 | Facsimile:  (212) 558-3588 |
| Cincinnati, OH  45202 |  |
| Telephone:  (513) 723-4019 | Kamil R. Shields |
| Facsimile:  (513) 852-7885 | **SULLIVAN & CROMWELL LLP** |
|  | 1700 New York Avenue N.W. |
|  | Suite 700 |
|  | Washington, D.C.  20006 |
|  | Telephone:  (202) 956-7500 |
|  | Facsimile:  (202) 956-7676 |
|  |  |
|  | *Counsel for Defendant Gerber Life* |
|  | *Insurance Company* |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025, I filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel registered with ECF.

December 12, 2025                                    */s/ Robert J. Giuffra, Jr.*
                                                    Robert J. Giuffra, Jr.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c) and Your Honor's Individual Rule of Practice II.B, I hereby certify that the foregoing Memorandum of Law is ten pages, excluding the caption, table of contents, table of authorities, signature blocks, certificates, and attachments, in compliance with this Court's December 5, 2025 Order (Dkt. 397).

December 12, 2025                                    */s/ Robert J. Giuffra, Jr.*
                                                    Robert J. Giuffra, Jr.