UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ESTATE OF JOSEPHINE LOGUIDICE, *et al.*,

                        Plaintiffs,

                v.

GERBER LIFE INSURANCE COMPANY,

                        Defendant.

No. 20-CV-03254 (KMK)

ORDER

---

KENNETH M. KARAS, United States District Judge:

Plaintiffs Estate of Josephine Loguidice and Emilie Norman ("Plaintiffs") bring this class action against Gerber Life Insurance Company ("Defendant"), alleging two of Defendant's insurance policies—the Grow-Up Plan and the College Plan (the "Plans")—were deceptively marketed to consumers, violating New York's General Business Law and constituting fraudulent inducement.  (Second Am. Compl. (Dkt. No. 25).)  The Court certified a class of certain holders of the Plans on September 27, 2024.  (Bench Ruling Tr. (Dkt. No. 320).)  Defendant sought interlocutory review from the Second Circuit, which the Circuit denied on March 28, 2025.  (Mandate of USCA (Dkt. No. 353).)  Defendant now moves to decertify the class.  (Dkt. No. 398).  Because no new development since the Court's order certifying the class justifies decertification, and the Court's predominance determination remains appropriate, the Court denies the motion.

This Court has "the affirmative duty of monitoring [its] class decisions in light of the evidentiary development of the case."  *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) (citation and internal quotation marks omitted).  But Defendant points to no "evidentiary development[s]," *id.*, or other changed circumstances since the Court's certification order that

would justify decertification.  *See Hnot v. Willis Grp. Holdings Ltd.*, 241 F.R.D. 204, 208 (S.D.N.Y. 2007) ("Reconsideration of class certification is warranted if there is a showing of a significant intervening event or compelling reasons that could render the requirements of Rule 23 no longer satisfied." (citations and internal quotation marks omitted)); *see also Norman v. Transunion*, 669 F. Supp. 3d 351, 367 (E.D. Pa. 2023) ("The essential question [in a decertification motion], however, is whether circumstances have changed since certification." (citation omitted)); *Bayshore Ford Truck v. Ford Motor Co.*, No. 99-CV-741, 2010 WL 415329, at *2 (D.N.J. Jan. 29, 2010) ("Courts regularly re-evaluate and/or decertify classes where subsequent facts call into question whether continued class action treatment is proper." (collecting cases)).  Defendant argues the new circumstances are this Court's explanation of the voluntary payment doctrine and discussion of certain advertisements in its summary judgment order.  (Mot. to Decertify 3 (Dkt. No. 399).)  The Court views neither as a changed circumstance—its language in the summary judgment order tracks its prior discussion of the doctrine in its oral class certification order on the voluntary payment doctrine, no substantive law the Court cited in that Opinion is new to the Parties, and Defendant does not explain what new fact about the advertisements the Court found.  (*Compare* Bench Ruling Tr. 24:20-25:2 (Dkt. No. 320), *with* Order on Summ. J. 67 (Dkt. No. 374).)  That alone is sufficient to deny Defendant's motion to decertify the class, which is in substance an untimely motion for reconsideration of the Court's certification order.

Even if the summary judgment order introduced a new development that merited revisiting the Court's certification order, the voluntary payment doctrine or allegations about this advertising scheme would not preclude a finding of predominance here.  "As the Supreme Court noted in *Amchem*, 'predominance is a test readily met in certain cases alleging consumer or

securities fraud or violations of the antitrust laws[.]'" *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 314 (3d Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)) (alterations adopted); *id.* ("This case, involving a common scheme to defraud millions of life insurance policy holders, falls within that category."); *cf.* Principles of the Law of Aggregate Litigation § 2.03, illustrations 4, 5, 8 (providing, as an example of a case where aggregate treatment would be appropriate, a case where consumers "have claims . . . premised on the allegation that Defendant fraudulently misrepresented the financial terms associated with the insurance policies sold through its agents to each consumer," "the alleged misrepresentations consist exclusively of a strictly standardized sales pitch prescribed by Defendant for use by insurance agencies," and "the applicable substantive law uses an objective, reasonable-person standard for reliance").  What makes consumer fraud class actions readily satisfy predominance is their focus on "upstream" conduct—that is, the defendant's conduct toward the class.  "Upstream" issues are at the center of this case.  Here, the class alleges Defendant conducted a thematically consistent marketing scheme for two plans, the marketing scheme was misleading, and the disclosures that members of the class received did not sufficiently apprise them of the nature of the products they purchased.[1]  (*See* Bench Ruling Tr.

---

[1] Defendant argues while the class was certified based on a finding that Defendant "deployed a 'common method of marketing,'" the Court "reversed course" at summary judgment by "holding that whether the ads were misleading is a fact question for the jury that depends on the specific wording and layout of particular ads" and which plaintiff saw which ads.  (Mot. to Decertify 8–10 (Dkt. No. 399).)  Not so.  The Court considered the "specific wording and layout of particular ads" in the section Defendant cites, (*id.*), to the extent necessary to conclude those ads were not inactionable puffery as a matter of law, as Defendant urged they were—not that those ads were not part of a consistent marketing campaign.  (Order on Summ. J. 56 (Dkt. No. 374).)  The Court *did* hold that "Defendant's position" that "in order to challenge an advertising scheme under the NY GBL, plaintiffs [must] demonstrate that they viewed each advertisement in the scheme," "would impose a nearly insurmountable burden on litigants challenging marketing schemes as a whole, as opposed to specific advertisements."  (Order on Summ. J. 62 (Dkt. No. 374).)

19:6-19:12 (Dkt. No. 320) ("[P]laintiffs have put forward not only their theory, but have substantiated the theory with evidence that their claims do arise from the same course of events as to all class members based on the fact that plaintiffs were exposed to a sort of consistent theme of deceptive advertising and subjected to the same material omissions[.]").)

The voluntary payment doctrine, which "bars recovery of payments voluntarily made with full knowledge of the facts," *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 534 (E.D.N.Y. 2017) (citation omitted), does not threaten to redirect that focus and defeat predominance. First, Defendant cannot explain why the defense (which the Court found was not atypical, *see* Bench Ruling Tr. 24:20-25:10 (Dkt. No. 320)) is not amenable to classwide treatment. The defense also concerns "upstream" conduct to the extent that it turns on whether what Defendant communicated to the class, including the named plaintiffs, was enough to fully inform them about what they bought. Defendant's own briefing at summary judgment seeks to prove, across the class, that it was.[2] (*See* Defs. Mot. for Summ. J. 34 (Dkt. No. 333) ("Based on

---

[2] While Defendant correctly notes the Court's summary judgment opinion, "[i]n analyzing the voluntary payment doctrine, . . . evaluated evidence of Log[ui]dice's and Norman's individual purchasing decisions," (Mot. to Decertify 10 (Dkt. No. 399)), it does not follow therefrom that the defense either (1) is only provable or disprovable by individual evidence, or (2) creates individual issues that predominate over common issues. *See* 2 Newberg and Rubenstein on Class Actions § 4:55 (6th ed.) ("In many circumstances, however, a class that otherwise satisfies predominance can be certified even if affirmative defenses raise individual questions of law or fact. Courts are generally reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members, such that the presence of individual defenses does not by its terms preclude class certification." (internal quotation marks and citations omitted)); *see also Ge Dandong v. Pinnacle Performance Ltd.*, No. 10-CV-8086, 2023 WL 5658790, at *11 (S.D.N.Y. Oct. 17, 2013) ("[W]hile Defendants point to some 'non-uniform' conversations putative class members had about the Notes with the Distributors and with the putative class members' own personal financial advisors, none of these conversations—either alone or taken together—demonstrates that Plaintiffs cannot establish reliance through common, circumstantial evidence." (citations omitted)); *Hand v. Beach Enter. KC, LLC*, 456 F. Supp. 3d 1099, 1148 (W.D. Mo. 2020) ("But Defendants may not manufacture an individualized issue merely because they seek to corroborate their common theory of consent in an individualized way. If this were the case, surely any class action defendant could defeat

4

the [receipt of the disclosures and ads], it is evident that Norman, *like the rest of the classes'*

*members*, had full knowledge of the [Plans'] policies, and Log[ui]dice had full knowledge of the

Grow-Up Plan policies, at the time they made their first payments." (emphasis added)); *see also*

Pls.' Opp. to Def.'s Mot. to Decertify 6 (Dkt. No. 402) ("Either Gerber Life's marketing scheme

was deceptive and misleading—sustaining Plaintiffs' and [class] members' GBL and fraud

claims . . . *or it was not, in which case they lose*." (emphasis added)); *id.* at 6–7 ("Throughout

this matter, Gerber Life has argued that the doctrine applies based on evidence of its standard

practices and disclosures—uniform disclosures, 'canned' scripts for call center representatives,

and its uniform application process.").)[3] *See In re Cablevision Consumer Litig.*, No. 10-CV-

4992, 2014 WL 1330546 (E.D.N.Y. Mar. 31, 2014) ("[W]hether the voluntary payment doctrine

applies to any member of the putative class actually is a common issue among the class

members, not an individualized issue.").[4]  In this Motion, Defendant again points to its own

communications to the class—which Plaintiffs argue comprised a cohesive marketing

---

class certification by claiming that individual class member testimony was needed to corroborate
an affirmative defense that otherwise would apply to the class as a whole.").

[3] This is because if a jury finds there *is* no misleading, common advertising scheme or the
plaintiff did not view *any* of the scheme—and the jury may make that call—the class's claims
founder.  (*See* Order on Summ. J. 62–63 (Dkt. No. 374); *supra* note 1 and accompanying text.)

[4] Defendant correctly notes the *Cablevision* court so held because Plaintiffs argued all customers
were bound to a contract that may have foreclosed the application of the doctrine.  (Mot. to
Decertify 7 (Dkt. No. 399).)  But the court's fundamental point was that, if the plaintiffs there
were correct, then "resolution of the issue will apply to every member of the class[.]"
*Cablevision*, 2014 WL 1330546, at *11.  Plaintiffs here make the same point.  If they are correct
that Defendant's communications could not have given *any* class member a full sense of the
nature of Defendant's products, then the Court is back where the *Dupler* court found itself—
upholding a predominance determination notwithstanding the "possibility that a particular
plaintiff, despite a nondisclosure by the defendant, somehow stumbled upon the nondisclosed
fact at issue on his or her own and continued to make payments." *Dupler v. Costco Wholesale
Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008).

campaign—to argue the class would have been fully, subjectively informed as to the nature of the Plans.  (Mot. to Decertify 4 (Dkt. No. 399).)  The Court held, in declining to grant summary judgment on the voluntary payment doctrine, that "[w]hether Plaintiffs read and understood these disclosures, *and whether these disclosures sufficiently apprised them of the nature of the products they were purchasing*, is a question for the jury to determine."  (Order on Summ. J. 62–63 (Dkt. No. 374).)  Whether what Defendant told the class "sufficiently apprised them" is a gateway question to that defense and is answerable classwide[5]—and if the jury answers it in the affirmative, then Plaintiffs lose the case.

Second, even if the voluntary payment doctrine did require individual proof, that would not in and of itself defeat predominance.  *See Dupler*, 249 F.R.D. at 45 ("[E]ven if some portion

---

[5] Defendant argues it is not, because the communications were not uniform.  (*See* Mot. to Decertify 8 (Dkt. No. 399).)  But the Court found with respect to the GBL claims that other "courts have permitted plaintiffs to challenge *an advertising scheme writ large*, notwithstanding the fact that the plaintiffs had not viewed each advertisement in the scheme."  (*See* Order on Mot. for Summ. J. 62–63 (Dkt. No. 374) (emphasis added) (citing, inter alia, *MacNaughton v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 320–21 (N.D.N.Y. 2021), *aff'd in part, vacated in part, remanded sub nom. MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89 (2d Cir. 2023), and *In re 5-hour ENERGY Mktg. & Sales Pracs. Litig.*, No. 13-MDL-2438, 2017 WL 385042, at *7–8 (C.D. Cal. Jan. 24, 2017).)  Defendant argues, citing *Hasemann v. Gerber Prods.*, that such a claim is only appropriate where the marketing scheme "enabled a company to charge a higher price to everyone."  (Mot. to Decertify 10 n.7 (Dkt. No. 399).)  But Plaintiffs essentially *do* claim this in arguing that the Plans were worthless, which the Court held at summary judgment a reasonable jury could find.  (Pls.' Opp. to Def.'s Mot. to Decertify 4 n.1 (Dkt. No. 402); Order on Summ. J. 66 (Dkt. No. 374).)

As to the fraudulent inducement claims, Defendant argues the variation in advertisements or disclosures preclude a common finding of reliance.  But the Court noted at certification that "[c]ertification may be appropriate as long as plaintiffs can prove reliance through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue)."  (Bench Ruling Tr. 41:4-23 (Dkt. No. 320).)  *See also Pinnacle Performance Ltd.*, 2023 WL 5658790, at *9 (holding in a fraudulent inducement class action that "reliance may be proved through circumstantial evidence that plaintiffs would not have purchased a product but for a defendant's uniform misrepresentations and omissions about that product").  And the uniformity of the advertising campaign or scheme—which both claims depend on—is a question of fact the jury may resolve for or against the class.

of the class may have some non-common factual issues as to their independent knowledge of the [conduct at issue], in the context of the voluntary payment doctrine . . . such issues are not so complex or overwhelming to defeat the predominance requirement."); *id.* ("It is not the law that any time a voluntary payment doctrine issue is raised that certification must be denied.  Such an absolute rule would bar almost all class actions involving nondisclosures (even in standard form contracts) because there is always the possibility that a particular plaintiff, despite a nondisclosure . . ., somehow stumbled upon the nondisclosed fact . . . and continued to make payments.").  If, for whatever reason, the trial plan reveals that the voluntary payment doctrine would necessitate individualized proof, a "range of procedural mechanisms [is] available" to the Court short of decertification "to deal with potentially individualized affirmative defenses," 2 Newberg and Rubenstein on Class Actions § 4:55 (6th ed.) (internal citations omitted), including bifurcating the trial between liability and affirmative defenses like the voluntary payment doctrine, certifying an issue class on liability, or amending the scope of the class—options which would all "materially advance the resolution" of the class's claims, Principles of the Law of Aggregate Litigation § 2.02(a)(1).  For reasons discussed above, the Court is skeptical that need will arise.

Defendant's Motion to Decertify is accordingly denied.  Defendant's motion for leave to file a reply is also denied.  The Clerk of Court is respectfully directed to close the pending motions (Dkt. Nos. 398, 403).

SO ORDERED.

DATED:      December 30, 2025
            White Plains, New York

                                      _____
                                      KENNETH M. KARAS
                                      UNITED STATES DISTRICT JUDGE